Filed 9/9/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| DAVID PENILLA et al., | B262097 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC545697) |
| v. | |
| WESTMONT CORPORATION etc., et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles County, Debre Katz Weintraub, Judge.  Affirmed.

Citron & Citron, Thomas H. Citron, Joel F. Citron and Katherine A. Tatikian, for Defendants and Appellants.

Haney & Young, Steven H. Haney and Gregory L. Young, for Plaintiffs and Respondents.

Dowdall Law Offices for Western Manufactured Housing Communities Association, Inc. as Amicus Curiae on behalf of Defendants and Appellants.

# INTRODUCTION

Appellant Westmont Corporation doing business as Wildwood Mobile Home Country Club ("Westmont") owns land located in Hacienda Heights, Los Angeles County. David Penilla and 60 other named plaintiffs are primarily low-income mobilehome owners who rent the land. After plaintiffs filed a first amended complaint ("FAC") against Westmont and its employees or agents (collectively "appellants") alleging contract, tort and statutory causes of action, appellants filed a motion to compel respondents Penilla and 45 other named plaintiffs to arbitrate those claims. The trial court denied the motion to compel, finding the arbitration provision contained in the rental agreements unconscionable and thus unenforceable. We conclude the arbitration provision was procedurally unconscionable, as it failed to disclose prohibitively expensive arbitration fees and was neither provided in a Spanish-language copy nor explained to respondents who did not understand written English. We further conclude the arbitration provision was substantively unconscionable as it imposed arbitral fees that were unaffordable or would have substantially deterred respondents from asserting their claims. The provision's unreasonably shortened limitations periods for many of the asserted causes of action and its limitation on the remedies available in arbitration for statutory claims further support a finding of substantive unconscionability. Accordingly, we affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On May 16, 2014, respondents and 15 other named plaintiffs filed the FAC against appellants Westmont, Mark Rutherford, Jo Davenport, Jose Hernandez, and David Donahue, asserting contract, tort and statutory claims. The FAC alleged 24 causes of action, including two causes of action under the Fair Employment and Housing Act ("FEHA"), Government Code section 12900 et seq.[1]

On July 23, 2014, appellants moved, pursuant to Civil Code of Procedure section 1281.2 for an order compelling arbitration of respondents' claims. In the motion, appellants alleged that respondents were signatories to a valid binding arbitration provision contained in rental agreements from 2000 to 2013 that encompassed all the causes of action. Appellants argued the claims in the FAC were covered by the arbitration provision, and that no grounds existed to revoke

---

[1] All plaintiffs alleged causes of action for breach of contract, public nuisance (Civ. Code, § 798.87), private nuisance, negligence, negligence per se, breach of the implied warranty of habitability, breach of the covenant of quiet enjoyment, improper utility services billings (Civ. Code, § 798.40 et seq.), failure to maintain trees or driveways (Civ. Code, § 798.37.5), illegal towing (Veh. Code, § 22650 et seq.), intentional infliction of emotional distress, intentional interference with property rights, trespass to land, invasion of privacy (Cal. Const., art. I, § 1), retaliation (Civ. Code, § 1942.5), racial discrimination in housing in violation of the FEHA (Gov. Code, § 12955), and unfair business practices (Bus. & Prof. Code, §§ 17200 et seq.). Respondents David Penilla, Maria Penilla and Roque Ulloa asserted a cause of action for battery. David Penilla separately asserted causes of action for slander and false arrest. Respondents David Davila, Joseph Gonzalez, Carlene Marin, Ronald Millier, Irene Ontiveros and Manuel Salazar alleged causes of action for unfair restraint on alienation (Civ. Code, § 798.74) and breach of the implied covenant of good faith and fair dealing related to appellants' interference with the (attempted) sales of their mobilehomes. Romana Ortiz and respondent Salazar asserted a cause of action for stalking. Finally, Chris and Linda Abeyta, Juana Hernandez, Angelina Rose Ortiz and respondent Maria Penilla asserted a cause of action for sexual harassment in housing (FEHA, Gov. Code, § 12955).

3

the provision.  They also sought an order staying the proceedings as to the other plaintiffs pending the outcome of the arbitration.

Appellants submitted copies of the written "Mobilehome Rental Agreement" containing the arbitration provision, executed by the parties.  The arbitration provision states:  "Arbitration of Disputes [¶] Binding arbitration under Code of Civil Procedure §§ 1280, et seq. shall be used to resolve disputes.  This term applies to all members of your household, privies and contractors even if not parties to this agreement.  The only non-arbitration exceptions are unlawful and forcible detainer; injunctive relief.  'Dispute' includes maintenance, condition, provision of the facilities, improvements, services and utilities, living conditions; injuries or damage, other residents and invitees [*sic*], or to property of any kind, from our operation, maintenance, or the condition of the community or its equipment, facilities, improvements or services, whether resulting in any part from our negligence or intentional misconduct; business administration or practices or operations; punitive damages and class action claims.  Also included are disputes with employees, contractors, agents or any other person who you contends [*sic*] has injured you and you also contends [*sic*] that we are responsible for that other person's acts or failure to act.  [¶]  If you do not give us notice within one (1) year of the date of any occurrence, or disputed condition or act or omission, we will not be liable for any injury or damage to you or others in your household.  Damages shall be limited to a 1 year period prior to the date you deliver your written demand or notice of intention to arbitrate.  [¶]  An arbitrator shall be appointed by the Judicial Arbitration And Mediation Service [*sic*], Inc. ('JAMS').  If the parties cannot agree, JAMS will select 5 neutral arbitrators; the parties shall strike 2.  Civil discovery shall be permitted.  No dispute shall be consolidated with any other dispute.  Each party to advance one be billed [*sic*] for one-half the fees; failure to

4

pay results in default award. A referee shall decide all disputed issues without a jury as provided by Code of Civil Procedure §§ 638, et seq. if arbitration is not applicable or enforceable. The arbiter may impose no remedy except money damages and remedies allowed by the Mobilehome Residency Law. Receivership or punitive damages [if more than two percent of owner equity in the park or if in addition to any statutory penalty in any sum], exceed the arbiter's jurisdiction." None of the submitted documents were in Spanish or translated, wholly or in part, into Spanish.

Respondents opposed the motion, arguing the arbitration provision was unconscionable. They contended the provision was procedurally unconscionable on the following grounds: (1) it was a contract of adhesion; (2) although 15 of the 46 named respondents spoke little or no English, they were never given a Spanish language copy of the arbitration provision, and no one explained it to them in Spanish; (3) it was outside respondents' reasonable expectations that the arbitration provision would include tort claims, yet exclude unlawful detainer actions; (4) the fees unique to arbitration were outside respondents' reasonable expectations; and (5) respondents were under severe economic pressure to agree to the arbitration provision. Respondents contended the arbitration provision was substantively unconscionable on the following grounds: (1) there was a lack of mutuality, given that unlawful detainer actions, which could only be brought by Westmont, were excluded from arbitration; and (2) arbitration would be prohibitively expensive for respondents, as they could not afford to advance the arbitration fees. They further contended the unconscionable terms permeated the arbitration provision and could not be severed.

In supporting declarations, several respondents stated that Spanish was their native language, and that they did not speak English. They asserted they were not

5

provided with a Spanish-language copy of the agreement. Additionally, although Westmont's managers informed respondents in Spanish that they were required to sign the rental agreement, the managers never advised them of the arbitration provision or its terms.

In their reply, appellants argued the arbitration provision was not unconscionable. With respect to procedural unconscionability, appellants contended the rental agreements containing the arbitration provisions were not contracts of adhesion, as respondents had other options for housing. Additionally, they contended there was no surprise, as each plaintiff initialed the arbitration provision. With respect to substantive unconscionability, appellants contended the exclusion for unlawful detainer and eviction actions did not show a lack of mutuality. They argued the instant arbitration provision did not impose prohibitive costs, noting the requirement of a single arbitrator and numerous judicial findings that arbitration is generally less expensive than litigation.

The trial court requested supplemental briefing on plaintiffs' incomes at the time they signed the agreements, and the projected cost estimate for each of the individual claims. Respondents submitted evidence that none of them could afford to pay for arbitration.[2] They also submitted declarations from two plaintiffs that they were not afforded adequate time to read the rental agreement containing the arbitration provision before being told to sign the documents. Additionally, they submitted declarations showing they were under economic pressure to sign the agreements, as they already had paid for the mobile home or made a large down payment when presented with the agreements, and failure to sign would have

---

[2]     The declarations show that most respondents earned less than $3,000 a month. No respondent earned more than $10,000 a month, and few earned more than $5,000.

6

forced them to look for new housing. Many stated that they could not afford other housing.[3]

The arbitration provision did not detail the amount of arbitration fees. Nor were fee schedules for JAMS arbitrators attached. Respondents' counsel, Steven H. Haney, submitted a declaration stating he had ascertained the amount of arbitration fees by contacting the Los Angeles Office of JAMS and obtaining fee schedules for 10 neutrals. He attached the fee schedules, showing fees for a single arbitrator ranged from $500 to $800 per hour, or from $5,000 to $10,000 per day, depending on the neutral selected. In addition, JAMS assessed a mandatory $400 filing fee. Haney also opined that based on his experience, it would take two to three days to arbitrate the common claims. For those plaintiffs with additional claims, four to six days would be required.

In response, appellants again disputed that respondents were under economic pressure to sign the rental agreements, arguing that their failure to sign would result in the refund of all monies, except a small escrow fee. Appellants also disputed the length of arbitration, arguing that an individual plaintiff's claims would require no more than two days. They did not challenge the JAMS fee schedules.

On February 5, 2015, the trial court denied appellants' motion for an order compelling arbitration. The court determined that appellants had demonstrated a written arbitration agreement between the parties existed and that all of the causes of action in the FAC were subject to arbitration. However, it concluded that respondents had met their burden to show the arbitration agreement was

---

[3] As the amicus curiae brief filed by Western Manufactured Housing Communities Association, Inc. acknowledges, mobilehomes are more affordable than traditional foundation-constructed housing.

7

unconscionable and therefore unenforceable. The court found the arbitration provision in the mobilehome rental agreements was procedurally and substantively unconscionable. It determined there was a considerable degree of procedural unconscionability, as (1) the arbitration provision was contained in a contract of adhesion, and most respondents signed the contract after making a significant financial commitment to purchase their mobilehomes; (2) appellants did not inform respondents that they would have to pay, in advance, half of the $5,000 to $10,000 fee for each day of arbitration before a single neutral in order to avoid a default; and (3) appellants failed to attach documentation informing respondents of JAMS's arbitration fees. The court further determined there was substantive unconscionability, as (1) the arbitration provision lacked mutuality, given the carve-out for unlawful detainer actions; and (2) the arbitration provision imposed unreasonable and prohibitively expensive arbitration costs on respondents. As to the latter, the court found that respondents' incomes at the time they signed the agreements were at levels rendering the cost of arbitration prohibitively expensive, and that the arbitration costs greatly exceeded the expected recovery on respondents' claims.[4]

On February 19, 2015, appellants filed a timely notice of appeal from the order denying their motion to compel arbitration.

---

[4] Appellants argue the trial court was biased against arbitration as a means of dispute resolution. They rely on the court's ultimate determination that arbitration would be an "'inferior forum'" to resolve the disputes in this case. We find no bias. A forum that would prevent a person of limited means from filing and proceeding with a meritorious claim is inferior to our court system.

## DISCUSSION

Code of Civil Procedure section 1281.2. provides: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that [¶]. . .[¶] [g]rounds exist for revocation of the agreement."[5] Similarly, under Civil Code section 1670.5, subdivision (a), "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Here, the trial court denied appellant's motion to compel arbitration, concluding that the arbitration provision was unconscionable and thus unenforceable. To the extent extrinsic evidence was presented to the trial court, "[w]e will uphold the trial court's resolution of disputed facts if supported by substantial evidence. [Citation.]" (*Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1277.) "Absent conflicting extrinsic evidence, the validity of an arbitration clause, including whether it is subject to revocation as unconscionable, is a question of law subject to de novo review." (*Serpa v. California Surety Investigations, Inc.* (2013) 215 Cal.App.4th 695, 702.)

As our Supreme Court has explained: "The party resisting arbitration bears the burden of proving unconscionability. [Citations.] Both procedural

---

[5] All further statutory citations are to the Code of Civil Procedure, unless otherwise stated.

unconscionability and substantive unconscionability must be shown, but 'they need not be present in the same degree' and are evaluated on '"a sliding scale."' (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 247 (*Pinnacle*) quoting *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*).) '"[T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa.' [Citation.]" (*Pinnacle, supra,* 55 Cal.4th at p. 247.)

### A.   *Procedural Unconscionability*

"Procedural unconscionability focuses on oppression or unfair surprise . . . ." (*Sanchez v. Western Pizza Enterprises, Inc*. (2009) 172 Cal.App.4th 154, 171.) "Oppression results from unequal bargaining power when a contracting party has no meaningful choice but to accept the contract terms.  [Citations.]  Unfair surprise results from misleading bargaining conduct or other circumstances indicating that a party's consent was not an informed choice.  [Citations.]" (*Id*. at p. 173, fn. omitted.)  "'There are degrees of procedural unconscionability.  At one end of the spectrum are contracts that have been freely negotiated by roughly equal parties, in which there is no procedural unconscionability. . . .  Contracts of adhesion that involve surprise or other sharp practices lie on the other end of the spectrum.'" (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1244.)

#### 1.   *Oppression*

Initially, we observe that the instant arbitration provision is a contract of adhesion, viz., "'a standardized contract, which, imposed and drafted by the party

of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" (See *Graham v. Scissor-Tail, Inc*. (1981) 28 Cal.3d 807, 817, quoting *Neal v. State Farm Ins. Cos*. (1961) 188 Cal.App.2d 690, 694.) Our Supreme Court has noted that "[t]he immobility of the mobilehome, the investment of the mobilehome owner, and restriction on mobilehome spaces, has sometimes led to what has been perceived as an economic imbalance of power in favor of mobilehome park owners . . . ." (*Galland v. City of Clovis* (2001) 24 Cal.4th 1003, 1010 [discussing mobilehome rent control ordinances].) Similarly, California courts have noted that landlords have more bargaining power than their tenants. (See, e.g., *Jaramillo v. JH Real Estate Partners, Inc.* (2003) 111 Cal.App.4th 394, 403 [discussing Civ. Code, § 1953].) The arbitration provision was drafted by appellant Westmont or its agents, and no evidence suggests that respondents could either reject or negotiate the terms of the arbitration provision. While relevant to our analysis however, "an adhesion contract remains fully enforceable unless . . . the provision falls outside the reasonable expectations of the weaker party" or it is otherwise unconscionable. (*Fittante v. Palm Springs Motors, Inc*. (2003) 105 Cal.App.4th 708, 722.)[6]

---

[6]    We reject appellants' contention that there was no contract of adhesion, because the FAC alleged that respondents negotiated the rental agreements. The FAC does not allege that respondents negotiated the arbitration provision. Moreover, nothing suggests that respondents "could have opted out of the arbitration agreement or that [they] could have negotiated a . . . contract without an arbitration agreement." (*Sanchez v. Valencia Holding Co*., *LLC* (2015) 61 Cal.4th 899, 910-911, 914 (*Sanchez*) [finding adhesive contract evinces some procedural unconscionability].) No evidence shows that any preprinted contractual term in the rental agreements -- including the arbitration provision -- was interlineated or modified.

The evidence also shows that respondents were under severe pressure to sign the agreements. As set forth in multiple declarations, respondents signed the rental agreements containing the arbitration provision after they had paid for their mobilehomes or deposited a large amount of money toward the purchase of a mobilehome. Respondents are primarily low-income mobilehome owners, most of whom cannot afford other housing options. Although respondents who were in escrow on the purchase of a mobilehome and who refused to sign the rental agreement could have cancelled escrow and received most of their money back, they would have been required to quickly find other affordable housing options. For respondents who had already purchased a mobilehome, no evidence suggests they could readily have relocated their mobilehomes to another mobilehome park. As the Legislature has recognized and amicus curiae acknowledges, there is a "high cost" to moving a mobilehome. (See Health & Saf. Code, § 18250; amicus curiae brief, at p. 1, fn. 2.) Thus, as the trial court correctly found, after respondents had purchased a mobilehome or had made a significant commitment to purchase one, "they were left with no real practical choice other than to give in to the terms which were imposed by the owner of the land on which those mobilehomes were situated." In short, respondents had no meaningful choice but to sign the rental agreements containing the arbitration provision.

Appellants' reliance on *Crippen v. Central Valley RV Outlet* (2004) 124 Cal.App.4th 1159, is misplaced. There, the plaintiff purchased a used motor home. (*Id*. at p. 1162.) The appellate court found no procedural unconscionability in the contract of sale's arbitration provision, as the plaintiff presented no evidence of the circumstances surrounding the execution of the agreement. (*Id*. at p. 1165.) The court noted that generally "nothing prevents purchasers of used vehicles from bargaining with dealers . . . ." (*Id*. at p. 1166.) In contrast, here, respondents

12

presented evidence showing the circumstances surrounding the execution of the rental agreements, specifically, that signing the rental agreements with the arbitration provisions was a requirement to completing the purchase of their primary residences. Moreover, a primary residence is qualitatively different from a recreational vehicle: recreational vehicle is a luxury item, a primary residence is not.

### 2. *Surprise*

Unfair """"surprise""""" covers a variety of deceptive practices and tactics, including hiding a clause in a mass of fine print or phrasing a clause in language that is incomprehensible to a layperson. (*Sanchez v. Western Pizza Enterprises, Inc.*, *supra*, 172 Cal.App.4th at p. 173, fn. 10; see also *Pinnacle*, *supra*, 55 Cal.4th at p. 247 ["surprise" typically involves hiding unconscionable provision in a prolix printed form].) The evidence below shows that a reasonable person would have been surprised by the arbitration provision. First, although Westmont's managers knew many respondents were not proficient in English, the managers never explained the arbitration provision in Spanish or provided a Spanish-language copy of it. The evidence indicates that one-third of respondents were not proficient in English, that Westmont's managers were aware of the language difficulties, and that the managers informed respondents in Spanish that they were required to sign the rental agreement but failed to advise them of the arbitration provision or its terms. Additionally, several respondents stated in sworn declarations that they were not provided sufficient time to review the arbitration provision. These facts support a finding of procedural unconscionability. (See *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 85 [finding procedural unconscionability where arbitration agreement was not translated into Spanish for

13

employees who could not read English, and one employee had only a few minutes to review and sign the multi-page employment agreement].)

Moreover, even for persons proficient in English, the instant arbitration provision is confusing and sometimes contradictory. For example, one sentence states that "class action claims" are subject to arbitration, but another provides that "[n]o dispute shall be consolidated with any other dispute." Thus, it is unclear what class action claims, if any, could be brought in arbitration. Similarly, while "injunctive relief" is excluded from arbitration, the provision states that the arbitrator may impose any remedies allowed by the Mobilehome Residency Law (Civ. Code, §§ 798 et seq.), which includes injunctive relief. (See, e.g., Civ. Code, § 798.88 ["any person in violation of a reasonable rule or regulation of a mobilehome park may be enjoined from the violation"].) In light of this lack of clarity, a reasonable person would have been at best surprised and at worst confused by the scope of the arbitration provision and the limitations on remedies available in arbitration.[7]

Even were the terms clear, appellants and their representatives failed to draw respondents' attention to the arbitration provision or explain its import. "Where the contract is one of adhesion, conspicuousness and clarity of language alone may not be enough to satisfy the requirement of awareness. Where a contractual provision would defeat the 'strong' expectation of the weaker party, it may also be necessary to call his attention to the language of the provision." (*Wheeler v. St. Joseph Hospital* (1976) 63 Cal.App.3d 345, 359-360.) "While arbitration may be within the reasonable expectations of consumers, a process that builds

---

[7] While not a basis for invalidating the arbitration provision, we note the drafter's tenuous grasp of grammar and syntax contributes to the difficulty in parsing its terms.

14

prohibitively expensive fees into the arbitration process is not." (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 90 (*Gutierrez*).) Here, appellants failed to explain that respondents would be required to advance half the costs of arbitration -- even for disputes involving small amounts of money -- that their share of those costs would be between $2,500 and $5,000 per day per arbitrator, and that there would be no arbitral fee waivers. Appellants' failure to provide information on the arbitration fees is particularly egregious here, as respondents' failure to advance half the fees would result in the entry of a default judgment on their claims.[8]

As noted, appellants failed to attach any documentation of arbitration fees. Respondents' attorney was able to obtain information regarding such fees only by contacting the local JAMS office. We take judicial notice that the JAMS Web site does not list the fee schedules for neutrals. (Cf. *Lane v. Francis Capital Management LLC* (2014) 224 Cal.App.4th 676, 690 [failure to attach copy of arbitration rules may support finding of procedural unconscionability where it would lead to surprise; finding no surprise where arbitration rules were easily accessible on Internet].) In sum, there was a significant degree of procedural unconscionability, as the evidence indicates both oppression and surprise.

B.    *Substantive Unconscionability*

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided.

---

[8]    Appellants assert that numerous federal and California cases have characterized arbitration as a relatively inexpensive means of dispute resolution. That fact would support a determination that prohibitively expensive arbitration costs are outside the reasonable expectations of a consumer.

15

[Citations.]  A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be 'so one-sided as to "shock the conscience."'" (*Pinnacle*, *supra*, 55 Cal.4th at p. 246, quoting *24 Hour Fitness, Inc. v. Superior Court* (1998) 66 Cal.App.4th [1199,] 1213.)  As our Supreme Court recently explained, the doctrine of unconscionability is concerned with contractual terms that are ""unreasonably favorable to the more powerful party."'" (*Sanchez*, *supra*, 61 Cal.4th at pp. 910-911.)  We conclude the instant arbitration provision is substantively unconscionable, as it imposes unreasonably high arbitration costs that significantly deter, if not effectively preclude, appellants from asserting their claims.  Our finding of substantive unconscionability is further supported by the provision's restrictions on the time in which respondents may bring their claims and the remedies available in arbitration.

### 1.    *Prohibitively High Arbitration Costs*

"[I]t is substantively unconscionable to require a consumer to give up the right to utilize the judicial system, while imposing arbitral forum fees that are prohibitively high." (*Gutierrez*, *supra*, 114 Cal.App.4th at p. 90.)  In *Gutierrez*, the court held that "a mandatory arbitration agreement is substantively unconscionable if it requires the payment of unaffordable fees to initiate the process." (*Id*. at p. 98.)  In determining the affordability of arbitration costs, a court should conduct a case-by-case analysis, with the party resisting arbitration bearing the burden of showing the likelihood of prohibitive costs.  (*Id*. at p. 96.)  Our Supreme Court recently approved *Gutierrez*'s approach on affordability of arbitration.  (*Sanchez*, *supra*, 61 Cal.4th at p. 919 ["We agree with *Gutierrez*'s approach."].)  It noted that an arbitration cost provision "cannot be held unconscionable absent a showing that

16

[arbitration] fees and costs in fact would be unaffordable or would have a substantial deterrent effect in [a plaintiff's] case." (*Id.* at p. 920.)

Here, the arbitration provision requires the parties to advance half the arbitration fees or suffer a default. Respondents presented evidence that a JAMS-conducted arbitration, as called for in the agreement, would require a mandatory $400 arbitration filing fee, and that fees for a single JAMS arbitrator ranged from $500 to $800 per hour, or from $5,000 to $10,000 per day.[9] They also presented evidence that most respondents earned less than $3,000 a month and could not afford to advance $2,500 to $5,000 per day of arbitration. In short, respondents met their burden to show arbitration was unaffordable. (See *Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1580-1582 (*Parada*) [petitioners demonstrated cost provision substantively unconscionable where they submitted declarations showing their inability to each pay $20,000 in arbitration costs].)[10]

---

[9] The arbitration provision provides that when a party brings an arbitral claim, "[a]n arbitrator shall be appointed by the Judicial Arbitration And Mediation Service, Inc. ('JAMS'). If the parties cannot agree, JAMS will select 5 neutral arbitrators; the parties shall strike 2." Thus, a single arbitrator would hear the matter unless the parties could not agree on the selection of arbitrator. In that case, JAMS would nominate five arbitrators and the parties would strike two. Although appellants contend that each party would strike two, leaving one arbitrator, the language is sufficiently ambiguous that it could be interpreted to permit the parties to strike a total of two arbitrators, leaving three to adjudicate the dispute. Although the likelihood of prohibitive costs is greater in the case of three arbitrators, we conclude that even a single JAMS arbitrator would be unaffordable for respondents.

[10] Appellants' reliance on *Woodside Homes of California, Inc. v. Superior Court* (2003) 107 Cal.App.4th 723, 733-734 is misplaced. There, the court concluded that plaintiffs had not shown judicial reference -- an alternate method of dispute resolution -- was unaffordable, because they presented no evidence that "the fees they are likely to pay are in fact greater than those which would accrue in litigation before the court." (*Id.* at p. 733.) *Woodside Homes* involved ongoing
*(Fn. continued on next page.)*

17

We note that the arbitration provision does not limit the amount of arbitration fees and contains no term that could reduce them. It has no provision for waiver of arbitration fees or for the allocation of such fees at the discretion of the arbitrator. Nor does it allow respondents to bring an otherwise arbitrable claim in small claims court. Additionally, consolidation is prohibited, precluding plaintiffs from splitting costs among themselves. Indeed, rather than alleviating prohibitively expensive arbitration costs, the provision increases the impact of those costs. It provides that a party's failure to advance the anticipated costs of arbitration results in a default. Thus, a plaintiff who belatedly discovers the high cost of arbitration may not dismiss an arbitrable claim, raise funds and refile the claim. (Cf. § 581, subd. (c) ["plaintiff may dismiss his or her complaint, or any cause of action asserted in it, in its entirety, or as to any defendant or defendants, with or without prejudice prior to the actual commencement of trial"].) As a practical matter, respondents unable to advance the arbitration fees will have their claims defaulted. Thus, far from providing an alternative forum in which to resolve their disputes, enforcement of the arbitration provision would effectively deprive them of any venue for adjudicating their claims.[11]

Appellants contend that the arbitration provision's requirement that each party advance half the arbitration costs is supported by section 1284.2. That statute

litigation costs, whereas the instant matter involves the cost to initiate arbitration. As noted above, respondents showed they could not afford to advance the fees to access the only forum available under the arbitration provision to resolve their disputes.

[11] We do not hold that the prohibition of joinder renders the contract unenforceable. However, the prohibition of joinder and the lack of other cost-allocation terms evidences an intent on the part of appellants to "discourage or prevent . . . [respondents] from vindicating their rights." (*Parada*, *supra*, 176 Cal.App.4th at p. 1582.)

provides: "Unless the arbitration agreement otherwise provides or the parties to the arbitration otherwise agree, each party to the arbitration shall pay his pro rata share of the expenses and fees of the neutral arbitrator, together with other expenses of the arbitration incurred or approved by the neutral arbitrator, not including counsel fees or witness fees or other expenses incurred by a party for his own benefit." By its own terms, section 1284.2 does not approve a requirement that parties <u>advance</u> their pro rata share of the expenses and fees or suffer a default. More important, it does not override "California's long-standing public policy of ensuring that all litigants have access to the justice system [or an alternate forum] for resolution of their grievances, without regard to their financial means." (*Roldan v. Callahan & Blaine* (2013) 219 Cal.App.4th 87, 94.) Thus, section 1284.2 cannot be interpreted to support an arbitration provision that would deny persons of limited means a forum in which to vindicate their rights. (*Roldan v. Callahan, supra,* 219 Cal.App.4th at pp. 95-96.)[12]

Appellants further contend that section 1284.3, subdivision (b) would act as a "'safety valve'" for high arbitration costs. Pursuant to that statutory provision, "[a]ll fees and costs charged to or assessed upon a consumer party by a private arbitration company in a consumer arbitration, <u>exclusive of arbitrator fees</u>, shall be waived for an indigent consumer." (*Id.* at subd. (b)(1), underscoring added.) Thus, while the $400 JAMS filing fee may be waived for indigent consumers, the statute

---

[12]     The arbitration provision provides that it is governed by the California Arbitration Act (CAA), §§ 1280 et seq., and does not mention the Federal Arbitration Act (FAA). Appellants concede the provision is governed by the CAA. Additionally, they have presented no evidence showing the instant matter involves interstate commerce. Thus, appellants' citations to federal case law interpreting arbitration agreements solely under the FAA is inapposite.

does not affect the prohibitively high cost of arbitrator fees. In short, section 1284.3 does not render arbitration affordable for respondents.[13]

Appellants dispute respondents' assertion that arbitration is unaffordable, contending that respondents' average gross annual income at the time they signed the rental agreements was approximately $50,628.84. Appellants' figure is not supported by the record. In calculating the average gross annual income, appellants apparently excluded respondents who did not report any income (Monica Bravatti, Christine Davis, Jose Luis Mendoza, and Maria Salazar) and included individuals not subject to arbitration (Chris Abeyta and Linda Abeyta, Hetty Torres and Beatrice Perez). In addition, appellants used the combined income of a household -- many of which include two or more respondents -- despite the arbitration provision's prohibition on consolidation of claims. When corrected for these errors, the individual average annual gross income of respondents at the time they signed the agreements was approximately $35,600, and their median annual income was approximately $32,600. A respondent earning this amount would likely qualify as an "indigent consumer," entitled to a fee waiver under section 1284.3, subdivision (b)(1).[14]

---

[13] As our Supreme Court has noted, "The legislative history shows that [section 1284.3]'s specific provisions were part of a general concern about the affordability of arbitration: 'One of the primary arguments advanced in support of mandatory consumer arbitration is that it is less costly than civil litigation. However, this argument is cast into significant doubt by the available evidence. In fact, arbitration costs are so high that many people drop their complaints because they can't afford to pursue them, a recent study by Public Citizen found.'" (*Sanchez*, *supra*, 61 Cal.4th at p. 919.)

[14] Section 1284.3, subdivision (b) provides that "'indigent consumer' means a person having a gross monthly income that is less than 300 percent of the federal poverty guidelines." Respondents signed the agreements between 2000 to 2013. Over those years, we take judicial notice that the federal poverty guidelines ranged

*(Fn. continued on next page.)*

Moreover, as our Supreme Court has noted, even a non-indigent consumer may be substantially deterred by high arbitration costs. (*Sanchez*, *supra*, 61 Cal.4th at p. 920 ["[H]igh arbitration fees can be unaffordable for nonindigent as well as indigent consumers, and nothing . . . precludes courts from using unconscionability doctrine on a case-by-case basis to protect nonindigent consumers against fees that unreasonably limit access to arbitration"].) For example, a person who earns $50,000 annually, supports a family, and has a claim requiring two days of hearings would likely be substantially deterred by having to advance 20 percent of his or her annual salary before arbitrating a claim.

Finally, in the context of mandatory employment arbitration agreements that apply to unwaivable statutory claims -- such as FEHA claims -- our Supreme Court has held that regardless of an employee's income, an employer must pay all costs unique to arbitration, including arbitrator fees. (*Armendariz, supra*, 24 Cal.4th at p. 113.) In the FAC, respondents asserted two FEHA claims -- racial discrimination and sexual harassment in housing. Nevertheless, the instant arbitration provision does not exempt respondents bringing those claims from the unique costs of arbitration. This fact further supports a finding of substantive unconscionability.

---

from $8,350 (in 2000) to $11,490 (in 2013) annually for a single-member household, and from $11,250 (in 2000) to $15,510 (in 2013) for a two-member household. (See http://aspe.hhs.gov/2000-hhs-poverty-guidelines and http://aspe.hhs.gov/2013-poverty-guidelines.) Based on their declarations, most respondents were supporting two or more persons on their income, and would have qualified as indigent consumers.

## 2. *Other Terms Contributing To Substantive Unconscionability*

On its face, the arbitration provision contains other terms that raise concerns of substantive unconscionability. Although the trial court did not address those contractual terms, the parties provided supplemental briefs at our request.

### i. *Shortened Arbitral Limitations Period*

The arbitration provision states: "If you do not give us notice within one (1) year of the date of any occurrence, or disputed condition or act or omission, we will not be liable for any injury or damage to you or others in your household. Damages shall be limited to a 1 year period prior to the date you deliver your written demand or notice of intention to arbitrate." In *Martinez v. Master Protection Corp.* (2004) 118 Cal.App.4th 107, the court found that a vastly shortened limitations period was unreasonable and restricted an employee's ability to vindicate his civil and statutory rights. There, the arbitral limitations period was six months, whereas FEHA claims have a one-year limitations period from the issuance of a "'right to sue'" letter and the Labor Code violations have three- or four-year limitations periods. (*Martinez v. Master Protection, supra,* 118 Cal.App.4th at pp. 117-118; see also *Gentry v. Superior Court* (2007) 42 Cal.4th 443, 470-471 (*Gentry*) [characterizing contractual term providing for "a one-year statute of limitations as opposed to the three-year statute for recovering overtime wages provided under Code of Civil Procedure section 338 [citation] and a four-year statute of limitations for the unfair competition claim under Business and Professions Code section 17208" as unfairly one-sided], abrogated on other ground as stated in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 360; *Nyulassy v. Lockheed Martin Corp.*, *supra*, 120 Cal.App.4th at p. 1283, fn. 12 ["shortened limitations period . . . is one factor leading us to hold that the

22

contract is substantively unconscionable" (italics omitted)].) Here, the one-year limitations period is significantly shorter than those for most of the claims in the FAC and further supports a finding of substantive unconscionability.[15]

### ii.    *Limitations On Arbitral Remedies*

As detailed above, the arbitration provision limits damages to one year from the demand for arbitration. It also precludes an award of "punitive damages [if more than two percent of owner equity in the park or if in addition to any statutory penalty in any sum]." In *Suh v. Superior Court* (2010) 181 Cal.App.4th 1504, the court found that a contractual term limiting an arbitrator's power to award "consequential, incidental, punitive or special damages" on breach of contract, tort and statutory claims was substantively unconscionable. (*Id*. at pp. 1509-1510 & 1515.) Likewise, in *Armendariz*, the Supreme Court held that an arbitration agreement may not limit punitive damages where authorized by statute, such as FEHA. (*Armendariz*, *supra*, 24 Cal.4th at pp. 103-104.) As noted, respondents asserted two FEHA claims, but the arbitration provision unlawfully limits punitive damage awards on those claims. The improper limitation on punitive damages further supports a finding of substantive unconscionability. (See *Gentry*, *supra*, 42 Cal.4th at p. 471 [noting that contractual terms limiting damages to one year from

---

[15]    For example, the contract claims have a four-year limitations period (see § 337), the unfair business practice claims have a four-year limitations period (see Bus. & Prof. Code, § 17208), the illegal towing claim has a three-year limitations period (see Veh. Code, § 22658; § 338, subd. (a)), and the negligence claims have a two- or three-year limitations period (see §§ 335.1, 338, subd. (b)).

date cause of action accrued and imposing $ 5,000 cap on punitive damages were unfairly one-sided].)[16]

C.     *Severance*

An unconscionable contractual term may be severed and the resulting agreement enforced, unless the agreement is permeated by an unlawful purpose, or severance would require a court to augment the agreement with additional terms. (See *Armendariz*, *supra*, 24 Cal.4th at pp. 124-125.)  Here, the arbitration provision has more than one unlawful term:  it requires that all parties -- even persons of limited means -- advance half the costs of arbitration fees or suffer a default, imposes a shortened limitations period on most claims, and improperly limits remedies available in arbitration.  Where an "arbitration agreement contains more than one unlawful provision," that factor weighs against severance.  (*Id*. at p. 124.)  Moreover, appellants do not argue on appeal that the terms governing the costs of initiating arbitration are severable.  As severing the selection of JAMS and the requirement to advance arbitration fees would require reforming the contract with additional terms, we decline to do so.

We conclude the arbitration provision is significantly unconscionable, both procedurally and substantively.  Accordingly, the trial court properly denied appellants' motion to compel arbitration.

---

[16]     In their supplemental briefing, appellants contend that *AT&T Mobility v. Concepcion* (2011) 563 U.S. 333, abrogated *Armendariz* to the extent it held that limitations of arbitral remedies with respect to statutory claims are substantively unconscionable.  *Concepcion* involved class-action waivers; it did not address limitations on arbitral remedies.

24

## DISPOSITION

The order is affirmed.  Respondents are entitled to their costs on appeal.

**CERTIFIED FOR PUBLICATION**


MANELLA, J.

We concur:



EPSTEIN, P.J.



WILLHITE, J.