Filed 8/16/22  Ojeda v. Vahi, Inc. et al. CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION FOUR

| | |
|---|---|
| LAWRENCE OJEDA, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> VAHI, INC., dba VALLEY HI TOYOTA, et al., <br><br> Defendants and Appellants. | B313717 <br><br> (Los Angeles County <br><br> Super. Ct. No. 21STCV00471) |

APPEAL from an order of the Superior Court of Los Angeles County, Dennis J. Landin, Judge. Affirmed.

Fisher & Phillips, Nicole Golob, Victoria Shin, and Megan E. Walker for Vahi, Inc. dba Valley Hi Toyota, Dick Browning, Inc., Todd Stokes, and Mike Mitsch.

Bosko and David Bosko for Lawrence Ojeda.

## INTRODUCTION

Vahi, Inc. dba Valley Hi Toyota, Dick Browning, Inc., Todd Stokes, and Mike Mitsch (collectively, the Dealership) appeal from an order denying their motion to compel plaintiff Lawrence Ojeda to arbitrate his employment-related claims against the Dealership. The Dealership contends the trial court erred in determining the arbitration agreements between the parties were unconscionable, and in refusing to sever any provisions the trial court considered unconscionable. For the reasons discussed below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Ojeda worked at the Dealership from approximately 2007 to 2020. He began as a sales associate, and was later promoted to a finance manager. During his employment, Ojeda signed several arbitration agreements.

Ojeda executed the first arbitration agreement on July 24, 2008, as part of his new-hire packet. Less than a month later, on August 19, 2008, Ojeda executed a second arbitration agreement included with a handbook acknowledgement. That agreement states that it "is the entire agreement between the Company and [Ojeda] regarding dispute resolution, the length of [Ojeda's] employment, and the reasons for termination of employment, and this agreement supersedes any and all prior agreements regarding these issues to the extent that they differ from the foregoing."

On November 6, 2015, Ojeda executed an "Employee Acknowledgment and Agreement [and] Agreement to Arbitrate" (the November 6, 2015 Agreement). The section regarding arbitration is 76 lines single-spaced and appears as the third

2

section of a six-section, four-page employment agreement. The November 6, 2015 Agreement states it is "the entire agreement between [Ojeda] and the Dealership regarding the matters addressed in this agreement and this agreement supersedes any and all prior agreements regarding these issues."

Eleven days later, on November 17, 2015, Ojeda signed a "Finance Manager Pay Plan," which includes an arbitration agreement at the end of the five-page document. This agreement, signed after the November 6, 2015 Agreement, purportedly took effect on November 1, 2015 (i.e., before the November 6, 2015 Agreement).

In February 2020, the Dealership terminated Ojeda. In January 2021, Ojeda filed a complaint against the Dealership, alleging claims for wrongful termination, discrimination, harassment, retaliation, failure to prevent discrimination and harassment, and intentional infliction of emotional distress.

In response to the complaint, the Dealership moved to compel Ojeda to arbitrate his claims based on the November 6, 2015 Agreement. In opposition, Ojeda argued no agreement to arbitrate exists between Ojeda and the Dealership because Ojeda is the only named party in the November 6, 2015 Agreement. Alternatively, he argued that even assuming the November 6, 2015 Agreement is the operative agreement, it is procedurally and substantively unconscionable. In support of his opposition, Ojeda submitted a declaration stating, in part, that he had to sign and return the arbitration form the same day he received it, and when he asked questions to his managers about any of the forms he received during his employment at the Dealership, he was given answers, such as "'shut up and sign it,'" or "'sign it if you want to keep working here.'"

After a hearing, the court issued an order denying the Dealership's motion to compel arbitration. The court held the Dealership met its burden of establishing the existence of an arbitration agreement. Rather than determining which arbitration agreement is the operative agreement, the trial court explained the "broad language of the arbitration provisions [in all agreements Ojeda signed throughout his employment] expressly covers the claims in the instant action . . . ." It held none of the agreements were enforceable, however, based on its finding of a "high degree of procedural unconscionability" and a "modest degree of substantive unconscionability." With respect to procedural unconscionability, the trial court found "the records show that [Ojeda] actively inquired about the nature of the forms but was not only denied any explanation but also was ridiculed and insulted for asking the questions"; "some [of the] agreements contain[ed] a long, single-spaced paragraph filled with statutory references and legal jargon"; and "with respect to arbitration costs, while the Arbitration Agreements references [sic] case law exceptions to Code of Civil Procedure section 1284.2's default rule, [the Dealership's] obligation to pay arbitration-related costs would not be evident to anyone without legal knowledge or access to the relevant authorities." The trial court then found substantive unconscionability on three bases: (1) the Dealership's unilateral right to change the arbitration agreement's terms; (2) the existence of multiple arbitration agreements with conflicting terms; and (3) the right to appeal a potential arbitration award.

Thus, the trial court concluded that "[u]nder the sliding scale approach, . . . [Ojeda] made a strong showing of both procedural and substantive unconscionability to render the [a]rbitration [a]greements unenforceable."

4

The Dealership timely appealed. Ojeda cross-appealed, contending the trial court erred in holding a valid arbitration agreement exists between the parties.[1]

## DISCUSSION

A.  *Applicable Law and Standard of Review*

A written agreement to submit a controversy to arbitration is valid and enforceable, absent a reason under state law, such as unconscionability, that would render any contract revocable. (Code Civ. Proc., § 1281; *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 114 (*Armendariz*); *Sandoval-Ryan v. Oleander Holdings LLC* (2020) 58 Cal.App.5th 217, 222.) "The party seeking to compel arbitration bears the burden of proving the existence of an arbitration agreement, while the party opposing the petition bears the burden of establishing a defense to the agreement's enforcement. [Citation.]" (*Aanderud v. Superior Court* (2017) 13 Cal.App.5th 880, 890.)

Unconscionability is such a defense. The doctrine of unconscionability has both a procedural and a substantive

---

1  We note this argument is simply an additional, independent ground on which, Ojeda argues, we should affirm the trial court's order. It therefore could have been made in Ojeda's opposition brief as opposed to bringing a separate cross-appeal. (See *State Water Resources Control Bd. Cases* (2006) 136 Cal.App.4th 674, 828 fn. 61 ["A party who advocates the affirmance of a judgment does not have to file a cross-appeal to assert the judgment was correct on grounds other than the one on which the trial court relied. [Citation.]"].) In any event, in light of our conclusion that the November 6, 2015 Agreement is unconscionable (as discussed below), the cross-appeal is moot.

element. (*Baltazar v. Forever 21, Inc.* (2016) 62 Cal.4th 1237, 1243-1244 (*Baltazar*).) "'[T]he former focus[es] on "'oppression'" or "'surprise'" due to unequal bargaining power, the latter on "'overly harsh'" or "'one-sided'" results.' [Citation.]" (*Little v. Auto Stiegler, Inc.* (2003) 29 Cal.4th 1064, 1071 (*Little*).) But the two elements need not exist to the same degree. The more one is present, the less the other is required to invalidate an agreement. (*Armendariz, supra*, 24 Cal.4th at p. 114 [unconscionability is measured on a sliding scale in which greater procedural unconscionability requires less substantive unconscionability, and vice versa].)

If a court finds a clause within a contract to have been unconscionable at the time it was made, the court may refuse to enforce the contract, or instead sever the unconscionable clause and enforce the remainder of the contract. (Civ. Code, § 1670.5, subd. (a); *Armendariz, supra*, 24 Cal.4th at p. 122.)

"Standards of review of orders on a motion to compel arbitration are not uniform. [Citation.] Generally, if the trial court's order rests on a factual determination, the appellate court adopts a substantial evidence standard. If the court's decision rests solely on an interpretation of law, then we employ the de novo standard of review. [Citation.]" (*Contreras v. Superior Court* (2021) 61 Cal.App.5th 461, 468.) "We review a trial court's order declining to sever the unconscionable provisions from an arbitration agreement for abuse of discretion." (*Lange v. Monster Energy Co.* (2020) 46 Cal.App.5th 436, 453, citing *Armendariz, supra*, 24 Cal.4th at p. 124.)

B.     *Operative Agreement*

As a threshold matter, we first address which arbitration agreement is the operative agreement between the parties. The

6

Dealership contends the operative agreement is the November 6, 2015 Agreement. It argues that although Ojeda signed the "Finance Manager Pay Plan," which included an arbitration agreement, after the November 6, 2015 Agreement, the Finance Manager Pay Plan took effect before the November 6, 2015 Agreement. It follows, according to the Dealership, that the November 6, 2015 Agreement superseded the arbitration agreement contained in the Finance Manager Pay Plan.

In arguing the issue of unconscionability in the trial court, Ojeda too focused on the November 6, 2015 Agreement.[2] The trial court, however, made findings of procedural and substantive unconscionability with respect to all arbitration agreements executed by Ojeda during his employment. As discussed below, even assuming (without deciding) the November 6, 2015 Agreement is the operative agreement, we conclude that agreement is unconscionable, rendering it unenforceable.

C.    *Procedural Unconscionability*

The trial court found the execution of *all* arbitration agreements throughout Ojeda's employment involved a "high degree" of procedural unconscionability. Focusing solely on the execution of the November 6, 2015 Agreement, we agree.

"A procedural unconscionability analysis 'begins with an inquiry into whether the contract is one of adhesion.' [Citation.] An adhesive contract is standardized . . . and offered by the party

---

2      We acknowledge Ojeda argues he was forced to sign multiple confusing and inconsistent arbitration agreements. The bulk of his argument regarding both procedural and substantive unconscionability, however, focuses on the November 6, 2015 Agreement.

with superior bargaining power 'on a take-it-or-leave-it basis.' [Citations.] Arbitration contracts imposed as a condition of employment are typically adhesive . . . ." (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 126 (*OTO*).) The Dealership does not deny the November 6, 2015 Agreement is an adhesive contract.[3] "The pertinent question, then, is whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required. [Citation.] ""*Oppression* occurs where a contract involves lack of negotiation and meaningful choice, *surprise* where the allegedly unconscionable provision is hidden within a prolix printed form."" [Citations.]" (*OTO, supra,* 8 Cal.5th at p. 126.) The record demonstrates both surprise and oppression.

Our Supreme Court in *OTO* found the record supported the trial court's finding of surprise where the arbitration agreement consisted of a "single dense paragraph" of "51 lines," and the text was "'visually impenetrable' and 'challenge[d] the limits of legibility.'" (*OTO, supra,* 8 Cal.5th at p. 128.) The "substance of the agreement" was "similarly opaque" because the sentences were "complex, filled with statutory references and legal jargon." (*Ibid.*)

Similarly, here, the November 6, 2015 Agreement is long, dense, and complex. As the trial court noted, the November 6, 2015 Agreement is 76 lines long, made up of 8 single-spaced paragraphs. Like the agreement in *OTO,* the agreement here also

---

3    The Dealership notes the November 6, 2015 Agreement is silent regarding whether Ojeda was required to sign the agreement. But it provides no evidence contradicting Ojeda's evidence that he was required to sign the agreement to keep his job.

contains several statutory references to, for example, Title VII of the Civil Rights Act of 1964, unspecified "state or federal laws or regulations," and six different sections of the California Civil Code and Code of Civil Procedure. Thus, as stated in *OTO*, a layperson trying to navigate this text "would not have an easy journey." (*OTO, supra*, 8 Cal.5th at p. 128.)

Moreover, the *OTO* court also found the element of surprise in the arbitration agreement based on a cost provision that is identical to the one in the November 6, 2015 Agreement. (*OTO, supra*, 8 Cal.5th at pp. 128-129.) Like in *OTO*, the November 6, 2015 Agreement states: "If [Code of Civil Procedure] section 1284.2 conflicts with other substantive statutory provisions or controlling case law, the allocation of costs and arbitrator fees shall be governed by said statutory provisions or controlling case law instead of [Code of Civil Procedure] section 1284.2." As the *OTO* court explained: "Although the agreement anticipates that the 'controlling case law' of *Armendariz*[4] would prevail over the statutory default rule, [the employer's] obligation to pay arbitration-related costs would not be evident to anyone without legal knowledge or access to the relevant authorities." (*OTO, supra*, 8 Cal.5th at pp. 128-129.)

The record also supports the trial court's finding of oppression. "'The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time

---

4      Code of Civil Procedure section 1284.2 states a default rule that, unless the agreement specifies otherwise, parties to an arbitration will bear their own expenses. *Armendariz* created an exception to this general rule for arbitrations of employment-related disputes, however. (See *Armendariz, supra*, 24 Cal.4th at pp. 110-111.)

9

the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.' [Citation.]." (*OTO, supra*, 8 Cal.5th at pp. 126-127.) Substantial evidence of all five factors of oppression is present here: (1) the Dealership required Ojeda to sign and return the agreement the same day he received it; (2) Ojeda declared that when he asked questions about any forms he was given to sign at the Dealership, his managers would "dismiss [him]," "make fun of [him], and tell him to '"shut up and sign it"' or '"sign it if [he] want[ed] to keep working here"'; (3) as discussed above, the November 6, 2015 Agreement is 76 lines long, 8 single-spaced paragraphs, and complex to a lay person; (4) Ojeda has no college degree and no legal knowledge or experience; and (5) Ojeda had no assistance from, nor an opportunity to seek assistance from, an attorney. Further, Ojeda had been an employee of the Dealership eight years at the time he was presented with the November 6, 2015 Agreement. As the trial court noted, "[the] economic pressure can also be substantial when employees are required to accept an arbitration agreement in order to *keep* their job[s]." (See *OTO, supra,* 8 Cal.5th at p. 127 ["Employees who have worked in a job for a substantial length of time likely come to rely on the benefits of employment."].)

The Dealership's attempt to distinguish *OTO* is unavailing. It argues that unlike the employee in *OTO* who was required to execute the arbitration agreement "immediately," Ojeda was "simply told to return the signed policies the same day." But

10

Ojeda could not have reasonably reviewed the arbitration agreement. Had he done so, he would have lost opportunities for commission because a "majority of [his] pay was based on commissions for [his] involvement in sales." And, in any event, Ojeda declared he had "no understanding of what an arbitration was"; therefore, a cursory, independent review of the document during his shift, without a lawyer, would have been a futile exercise.

Accordingly, we conclude the record contains substantial evidence of a high degree of procedural unconscionability.

D.    *Substantive Unconscionability*

"Substantive unconscionability examines the fairness of a contract's terms. . . . [The] 'doctrine is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party."' [Citation.] Unconscionable terms "'impair the integrity of the bargaining process or otherwise contravene the public interest or public policy'" or attempt to impermissibly alter fundamental legal duties. [Citation.]" (*OTO, supra*, 8 Cal.5th at pp. 129-130.)

"Substantive terms that, in the abstract, might not support an unconscionability finding take on greater weight when imposed by a procedure that is demonstrably oppressive. Although procedural unconscionability alone does not invalidate a contract, its existence requires courts to closely scrutinize the substantive terms 'to ensure they are not manifestly unfair or one-sided.' [Citation]." (*OTO, supra*, 8 Cal.5th at p. 130.)

Given the "demonstrably oppressive" procedure imposed on Ojeda in connection with his execution of the November 6, 2015 Agreement, we conclude several terms in the agreement are

11

sufficiently one-sided that, taken together, they render the agreement substantively unconscionable.

First, the November 6, 2015 Agreement provides that "[t]he Dealership retains the right to add, change or delete wages, benefits, policies, and all other working conditions at any time (except the policy of 'at-will employment' and the arbitration agreement, which may not be changed, altered, revised, or modified without a writing signed by the President)." Thus, the Dealership has the unilateral right to change or modify the agreement at any time, and without notice to Ojeda, as long as the modification is in writing signed by the President.

Second, the November 6, 2015 Agreement permits an appeal to a second arbitrator upon either party's written request. In *Little*, *supra*, 29 Cal.4th 1064, 1074, our Supreme Court held a provision in an arbitration agreement that permitted either party to appeal an arbitration award of more than $50,000 was "unconscionably one-sided." Although the *Little* court focused on the $50,000 threshold, explaining it "inordinately benefits defendants," (*id*. at p. 1073), the court was also concerned with the delay and expense associated with appellate arbitral review. The *Little* court stated: "[Defendant employer] also argues that an arbitration appeal is less objectionable than a second arbitration . . . because it is not permitting a wholly new proceeding, making the first arbitration illusory, but only permitting limited appellate review of the arbitral award. We fail to perceive a significant difference. Each of these provisions is geared toward giving the arbitral defendant a substantial opportunity to overturn a sizable arbitration award. Indeed, in some respects appellate review is more favorable to the employer attempting to protect its interests. It is unlikely that an

12

arbitrator who merely acts in an appellate capacity will increase an award against the employer, whereas a trial or arbitration de novo at least runs the risk that the employer would become liable for an even larger sum than that awarded in the initial arbitration." (*Id*. at pp. 1073-1074.) Thus, the appellate arbitral review provision in the November 6, 2015 Agreement, even without a threshold dollar amount, presents the same concerns as that in *Little*: "If the employee receives a substantial award, the employer can seek appellate arbitral review and thereby increase the expense and possibly the length of time required for the employee to obtain confirmation of her award, and do so with very little risk to itself." (*Alvarez v. Altamed Health Services Corp.* (2021) 60 Cal.App.5th 572, 595 [holding an arbitral appeal provision was unconscionable despite the absence of a dollar threshold].)

Third, the November 6, 2015 Agreement permits the Dealership to file dispositive motions during the arbitration including a demurrer, motion for judgment on the pleadings, and motion for summary judgment. The arbitrator "shall extend the times set by the [California Arbitration Act] for giving of notices and setting of hearings." These provisions, read together, favor the employer. Defendants are more likely to bring dispositive motions, and the arbitrator may extend the time of the arbitration to allow the defendant to do so, which lengthens the arbitration process and increases expense for the employee.

We conclude these provisions, read against the backdrop of the demonstrably oppressive procedure imposed on Ojeda to sign the agreement, render the November 6, 2015 Agreement substantively unconscionable. (See *OTO, supra*, 8 Cal.5th at p. 130 ["We hold that, given the substantial procedural

13

unconscionability here, even a relatively low degree of substantive unconscionability may suffice to render the agreement unenforceable. [Citation.]"].)

E.  *Severance*

The Dealership contends severance is appropriate, and the court abused its discretion by failing to sever the unconscionable provisions. We affirm the denial of severance.

"An unconscionable contractual term may be severed and the resulting agreement enforced, unless the agreement is permeated by an unlawful purpose, or severance would require a court to augment the agreement with additional terms. [Citation.]" (*Penilla v. Westmont Corp.* (2016) 3 Cal.App.5th 205, 223.) Severance may be properly denied when the agreement contains more than one unconscionable provision, and "'there is no single provision a court can strike or restrict in order to remove the unconscionable taint from the agreement.' [Citation.]" (*Baxter v. Genworth North America Corp.* (2017) 16 Cal.App.5th 713, 738.)

As discussed above, the November 6, 2015 Agreement contains more than one substantively unconscionable provision. "Such multiple defects indicate a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." (*Armendariz, supra*, 24 Cal.4th at p. 124.) Accordingly, we conclude the trial court did not abuse its discretion in declining to sever the unconscionable provisions.

## DISPOSITION

The order is affirmed. Ojeda is awarded his costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


CURREY, J.


We concur:


WILLHITE, Acting P.J.


COLLINS, J.