Filed 3/13/24  Arnold v. Antelope Manufactured Home Community CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| JANICE ELIZABETH ARNOLD et al., | C097244 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34-2022-00318831CU-BC-GDS) |
| v. | |
| ANTELOPE MANUFACTURED HOME COMMUNITY, LP et al., | |
| Defendants and Appellants. | |

Plaintiffs are current and former residents at a mobilehome park owned and operated by defendants Antelope Manufactured Home Community, LP and Antelope Manufactured Home Community GP LLC.  After plaintiffs had financially committed to purchasing their mobilehomes located in the park, defendants required plaintiffs to sign leases with an arbitration provision as a condition of moving into the park.  Many plaintiffs have not completed high school and have limited ability to understand English.

The arbitration provision does not designate an arbitral forum or disclose a fee schedule and precludes joinder of actions, consolidation, and class actions.

Plaintiffs sued defendants for failure to properly maintain the park. Defendants moved to compel arbitration. The trial court denied the motion. On appeal, defendants contend: (1) the Federal Arbitration Act applies to enforce the arbitration provision; (2) the Federal Arbitration Act preempts the Mobilehome Residency Law; (3) the arbitration provision is not unconscionable and, alternatively, any unconscionable portion is severable; and (4) even if the Federal Arbitration Act does not apply, California law requires enforcement of the arbitration provision.

We conclude the arbitration provision is unconscionable and severance is inappropriate. As such, we need not reach defendants' other claims. The trial court's order is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are current and former residents at the mobilehome park located in Antelope owned and operated by defendants. After plaintiffs had already made a downpayment for or purchased their mobilehomes located in the park, defendants asked plaintiffs to sign the leases for the first time as a condition of moving into the park. Defendants' manager told plaintiffs they must review the leases in the manager's office and instructed plaintiffs to initial various provisions and sign. But there is evidence defendants did not inform plaintiffs that the arbitration provision in the leases was optional, the terms of the leases were negotiable, they could have an attorney review the leases before signing, or they had 30 days to review the leases. Many plaintiffs have not completed high school. Although several plaintiffs' primary language is Spanish and plaintiffs have limited ability to understand English, defendants did not provide them with a Spanish version of the leases or tell them they could take the leases home for translation.

2

On page 15 of the 21-page lease is an arbitration provision initialed by plaintiffs that provides in pertinent part:

> **38. DISPUTE RESOLUTION PROCESS:** To ensure speedy resolution of disputes, neutral arbitration is used to resolve disputes. Arbitrator shall determine costs based on ability to pay. Arbitration applies to all claims for personal or bodily injury; and, claims for property damage and any claimed loss or expense whatsoever (apart from damages incidental to an unlawful detainer action). Arbitration shall be under the Federal Arbitration Act (FAA), as mobilehomes and appurtenances are constructed, shipped, financed and leased in interstate commerce.
>
> A. The arbitrator shall determine all issues including whether the dispute may be arbitrated. State laws shall not apply. Commercial Rules of the American Arbitration Association ("AAA") procedures apply. No joinder of actions or consolidation or class actions allowed. The award may be entered as a court judgment. Any alternative dispute resolution organization within 75 miles shall select 5 proposed arbitrators, each side strikes up to 2 names, the least expensive per hour of any remaining may be the arbitrators. . . .

Plaintiffs also initialed an acknowledgement stating they "HAVE AT LEAST 30 DAYS FROM THE DATE THE LEASE IS FIRST OFFERED . . . TO ACCEPT OR REJECT THE LEASE" and "HAVE BEEN ADVISED BY REPRESENTATIVES OF THE PARK THAT [THEY] HAVE THE RIGHT TO CONSULT A LAWYER AND GET THE LAWYER'S ADVICE BEFORE SIGNING THIS AGREEMENT. [¶] [THEY] HAVE BEEN GIVEN THE OPPORTUNITY TO SEEK LEGAL COUNSEL BEFORE SIGNING THIS AGREEMENT BUT CHOOSE TO DECLINE TO DO SO."

Plaintiffs sued defendants for failure to properly maintain common areas and facilities of the park, alleging causes of action for nuisance, breach of contract, breach of duty of good faith and fair dealing, negligence, breach of statutes, breach of warranty of habitability, breach of the covenant of quiet enjoyment, breach of unfair competition law,

3

and declaratory and injunctive relief. Defendants moved to compel arbitration. In support of their opposition to the motion, plaintiffs declared they were not allowed sufficient time to review the leases, did not know the leases contained an arbitration provision, did not understand the terms of the leases, did not intend to give up their rights to a jury trial, and cannot afford to advance any arbitration costs or pay for arbitration. Plaintiffs' counsel also submitted a declaration stating that JAMS, an arbitral forum with offices in Sacramento, charges a $3,000 filing fee that must be paid in full before any proceedings can start. She also noted other mobilehome residents incurred over $200,000 in total costs in a similar action. In their reply, defendants responded to plaintiffs' legal arguments. They did not submit any evidence about the cost of arbitration or plaintiffs' ability to pay.

The trial court denied the motion on the ground that the Federal Arbitration Act does not apply, the leases are void under the Mobilehome Residency Law, and the arbitration provision is unconscionable. Defendants timely appealed.

DISCUSSION

As an initial matter, we note the arbitration provision empowers the arbitrator to decide the issue of arbitrability. We nevertheless conclude we may review plaintiffs' unconscionability claim because they contend that they never knowingly agreed to the arbitration provision. (*Bruni v. Didion* (2008) 160 Cal.App.4th 1272, 1287, 1290-1291 [when the parties resisting arbitration claim that they never agreed to the arbitration provision, they cannot be required to arbitrate anything, including arbitrability, until a court has made a threshold determination that they did agree to arbitrate something].) We therefore turn to whether the arbitration provision is unconscionable.

A.      *General Principles of Unconscionability*

Both California law and federal law favor enforcement of valid arbitration agreements. (*Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 97 (*Armendariz*).) But generally applicable contract defenses such as

4

unconscionability may be applied to invalidate an arbitration agreement without contravening the Federal Arbitration Act or California law. (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 125.) "A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." (*Ibid.*) "[T]he doctrine of unconscionability has both a procedural and a substantive element, the former focusing on oppression or surprise due to unequal bargaining power, the latter on overly harsh or one-sided results." (*Sonic-Calabasas A, Inc. v. Moreno* (2013) 57 Cal.4th 1109, 1133.) Both procedural and substantive unconscionability must be present to establish unconscionability. (*Armendariz*, at p. 114.) "But they need not be present in the same degree. 'Essentially a sliding scale is invoked which disregards the regularity of the procedural process of the contract formation, that creates the terms, in proportion to the greater harshness or unreasonableness of the substantive terms themselves.' " (*Ibid.*)

The party asserting unconscionability bears the burden of proof. (*OTO, L.L.C. v. Kho, supra*, 8 Cal.5th at p. 126.) We review the unconscionability of an arbitration agreement de novo, applying general principles of California contract law. (*Dougherty v. Roseville Heritage Partners* (2020) 47 Cal.App.5th 93, 102.)

B.     *Procedural Unconscionability*

"Analysis of unconscionability begins with an inquiry into whether the contract was a contract of adhesion—i.e., a standardized contract, imposed upon the subscribing party without an opportunity to negotiate the terms." (*Flores v. Transamerica HomeFirst, Inc.* (2001) 93 Cal.App.4th 846, 853.) "A finding that the contract is adhesive is 'sufficient to establish some degree of procedural unconscionability.' " (*Long Beach Unified School Dist. v. Margaret Williams, LLC* (2019) 43 Cal.App.5th 87, 103.) But this alone is insufficient to render a contract unconscionable. (*Malone v. Superior Court* (2014) 226 Cal.App.4th 1551, 1561.)

"A higher degree of procedural unconscionability may be established through an additional showing of oppression or surprise." (*Long Beach Unified School Dist. v. Margaret Williams, LLC, supra*, 43 Cal.App.5th at p. 103.) "The circumstances relevant to establishing oppression include, but are not limited to (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney." (*Grand Prospect Partners, L.P. v. Ross Dress for Less, Inc.* (2015) 232 Cal.App.4th 1332, 1348.) "Procedural surprise focuses on whether the challenged term is hidden in a prolix printed form or is otherwise beyond the reasonable expectation of the weaker party." (*Morris v. Redwood Empire Bancorp* (2005) 128 Cal.App.4th 1305, 1321.)

Here, the leases are adhesive because they are standardized contracts drafted by defendants, who had superior bargaining power, and plaintiffs had no opportunity to negotiate. The circumstances surrounding the signing process also demonstrated oppression and an unfair surprise.

Defendants exerted significant pressure on plaintiffs to sign the leases by telling them that they could not move into the mobilehomes they had already purchased unless they signed. No evidence suggests plaintiffs could readily have relocated their mobilehomes to another mobilehome park. (See *Galland v. City of Clovis* (2001) 24 Cal.4th 1003, 1010 [noting "[t]he immobility of the mobilehome"].) Many plaintiffs do not have a high school education. But defendants did not explain the contents of the 21-page lease, including the arbitration provision, to plaintiffs; nor did they tell plaintiffs that the arbitration provision was optional. Instead, defendants instructed plaintiffs to initial and sign the leases at the office. "Thus, . . . after [plaintiffs] had purchased a mobilehome or had made a significant commitment to purchase one, 'they were left with

6

no real practical choice other than to give in to the terms which were imposed by the owner of the land on which those mobilehomes were situated.' " (*Penilla v. Westmont Corp.* (2016) 3 Cal.App.5th 205, 215.(*Penilla*))  Indeed, even though the leases contain acknowledgements from plaintiffs that they were given 30 days to review and the opportunity to seek legal counsel, plaintiffs declared under penalty of perjury that neither was true.  Defendants do not contest the accuracy of plaintiffs' declarations on appeal other than stating that they are "self-serving."

Defendants assert, without any citations to the record, that they followed the requirement in the Mobilehome Residency Law and provided plaintiffs with the leases before the close of escrow.  We do not consider this claim.  (*Tanguilig v. Valdez* (2019) 36 Cal.App.5th 514, 520 ["we may disregard factual contentions that are not supported by citations to the record"].)

The amount of arbitration fees and the requirement to advance those fees also gave plaintiffs "a nasty shock."  (*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1572 (*Parada*).)  The arbitration provision does not contain a fee schedule or disclose that a filing fee is required to commence an arbitration.  Although the provision states "Commercial Rules of the American Arbitration Association ('AAA') procedures apply," it does not designate the American Arbitration Association as the forum.  Instead, "[a]ny alternate dispute resolution organization within 75 miles" may hear the arbitration.  But it is unclear whether, when a different arbitral forum hears the dispute, the forum applies the fees schedule set forth in its procedural rules or in the American Arbitration Association commercial rules.

Defendants urge us not to be concerned with the lack of fee schedule because the arbitration provision provides "[a]rbitrator shall determine costs based on the ability to pay," which they interpret to mean that defendants will bear the costs if plaintiffs are unable to pay.  But this sentence is ambiguous because it is unclear whether "costs" include both the arbitrators' fees and administrative fees, or administrative fees alone; it

7

is also unclear whether, upon an ability to pay finding, the arbitrator can require defendants to bear plaintiffs' costs or merely lower plaintiffs' costs. (See *Penilla, supra*, 3 Cal.App.5th at pp. 216-217 [finding unfair surprise when arbitration provision contained confusing language].) Moreover, based on the only evidence in the record, for an arbitrator to consider plaintiffs' ability to pay, plaintiffs must first advance $3,000 to commence the arbitration, an amount they cannot afford. They also cannot share the filing fee by joining or consolidating their actions because the arbitration provision explicitly states "[n]o joinder of actions or consolidation or class actions allowed." Defendants do not provide a fee schedule of any other arbitral forum within 75 miles of Antelope that allows an arbitration to proceed with lower or no initial filing fee.

Defendants also unfairly surprised the Spanish-speaking plaintiffs by hiding the arbitration provision in English. One of the plaintiffs told defendants' manager about her difficulties in understanding English. But defendants did not provide a Spanish version of the leases, explain the contents of the leases in Spanish, or tell these plaintiffs they could take the leases home for translation. These facts support a finding of unfair surprise. (See *Penilla, supra*, 3 Cal.App.5th at p. 216 [mobilehome park owner unfairly surprised Spanish-speaking residents when the owners failed to provide a Spanish copy of the leases or advise the residents of the arbitration provision in the leases]; *Carmona v. Lincoln Millennium Car Wash, Inc.* (2014) 226 Cal.App.4th 74, 85 [car wash company unfairly surprised Spanish-speaking employee by failing to translate the enforceability clause and confidentiality agreement into Spanish].)

We reject defendants' contention that plaintiffs voluntarily and knowingly agreed to the arbitration provision by checking a line at the beginning and initialing at the end of the provision. As discussed above, defendants instructed plaintiffs, who were under economic stress and had limited education, to initial the arbitration provision without explaining the provision to plaintiffs or allowing them sufficient time to review. The checks and initials by plaintiffs therefore "did not represent an authentic informed

8

choice." (*Gentry v. Superior Court* (2007) 42 Cal.4th 443, 470, disapproved on another ground in *Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 366.)

Based on the adhesiveness of the agreement and the oppression and surprise present, we conclude the arbitration provision evinced a high degree of procedural unconscionability. "Under the sliding scale approach, only a low level of substantive unconscionability is therefore required to render the arbitration agreement unenforceable." (*Dougherty v. Roseville Heritage Partners, supra*, 47 Cal.App.5th at p. 104.)

## C.     *Substantive Unconscionability*

"Substantive unconscionability pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 246.) "[I]t is substantively unconscionable to require a consumer to give up the right to utilize the judicial system, while imposing arbitral forum fees that are prohibitively high." (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 90.) We consider "the amount of arbitration fees and costs, and the ability of the party resisting arbitration to pay them, as factors in assessing substantive unconscionability of a predispute arbitration agreement." (*Parada, supra*, 176 Cal.App.4th at p. 1579.)

Here, plaintiffs' counsel submitted a declaration stating JAMS requires a $3,000 filing fee to initiate an arbitration. While defendants contended at oral argument that cheaper arbitration services exist, they did not put into evidence a fee schedule of any alternative arbitration service. They also do not dispute that plaintiffs cannot afford the $3,000 JAMS filing fee. Although the arbitration clause gives the arbitrator the ability to allocate cost, it "provides little comfort to . . . plaintiffs here, who cannot afford to initiate the arbitration process in the first place." (*Gutierrez v. Autowest, Inc., supra*, 114 Cal.App.4th at p. 90.) Moreover, as discussed above, the fee allocation language is

ambiguous, as it is unclear whether the arbitrator has the discretion to require defendants to bear all of plaintiffs' fees upon an ability to pay finding.

The arbitration provision also prohibits joinder of actions, consolidation, and class actions, preventing plaintiffs from sharing their arbitration fees. This leads to inefficient results, as it requires plaintiffs to bring the same claims based on the same facts in 13 different arbitrations before 13 different panels that may reach different conclusions. "The prohibition on consolidation or joinder merely drives up the cost per party of arbitration. For all parties . . . joinder or consolidation of multiple claims could provide a more cost-effective means of resolving multiple disputes. The primary, if not only, reason for . . . prohibiting consolidation or joinder of claims, and for splitting the costs of arbitration, must be to discourage or prevent [plaintiffs] from vindicating their rights." (*Parada, supra*, 176 Cal.App.4th at pp. 1581-1582.) Defendants alleged at oral argument that each plaintiff's claims need to be considered separately because they concern the plaintiff's particular space in the park. But the complaint contained only causes of action by all plaintiffs against all defendants concerning common areas and facilities of the park. We do not see the need for these causes of action to be brought separately.

Returning to the sliding scale measurement for unconscionability, we conclude the arbitration provision contains a high degree of procedural unconscionability and a certain degree of substantive unconscionability and is therefore unenforceable. In so concluding, we are mindful of the U.S. Supreme Court's holding in *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333 and do not hold that the prohibition of joinder of actions, consolidation, and class actions renders the arbitration provision substantively unconscionable per se. Rather, given the circumstances here, "the prohibition of joinder [of actions, consolidation, and class action] and the lack of other cost-allocation terms evidences an intent on the part of [defendants] to 'discourage or prevent . . . [plaintiffs] from vindicating their rights.' (*Parada, supra*, 176 Cal.App.4th at p. 1582.)" (*Penilla, supra*, 3 Cal.App.5th at p. 219, fn. 11.)

10

Having concluded the arbitration provision is unconscionable, we need not consider defendants' other claims. (*OTO, L.L.C. v. Kho, supra*, 8 Cal.5th at p. 125 [unconscionability may be applied to invalidate arbitration agreements without contravening the Federal Arbitration Act or California law]; see *Knapp v. AT&T Wireless Services, Inc.* (2011) 195 Cal.App.4th 932, 939 ["Under ordinary appellate review, we do not address the trial court's reasoning and consider only whether the result was correct"].)[1]

## D. Severance

"[A]n arbitration agreement permeated by unconscionability, or one that contains unconscionable aspects that cannot be cured by severance, restriction, or duly authorized reformation, should not be enforced." (*Armendariz, supra*, 24 Cal.4th at p. 126.)

"[A]n unconscionable arbitration term should not be severed if drafted in bad faith because severing such a term and enforcing the arbitration provision would encourage drafters to overreach." (*Parada, supra*, 176 Cal.App.4th at p. 1586.) For example, "[a]n employer will not be deterred from routinely inserting such a deliberately illegal clause into the arbitration agreements it mandates for its employees if it knows that the worst penalty for such illegality is the severance of the clause after the employee has litigated the matter. In that sense, the enforcement of a form arbitration agreement containing such a clause drafted in bad faith would be condoning, or at least not discouraging, an illegal scheme, and severance would be disfavored unless it were for some other reason in the interests of justice." (*Armendariz, supra*, 24 Cal.4th at p. 124, fn. 13.)

---

[1] Defendants' request for judicial notice of Exhibits A, B, and C is denied because the exhibits are immaterial to our disposition. Defendants' request for judicial notice of Exhibit D is denied as unnecessary because the document is already part of the record on appeal.

We follow *Parada* in declining to sever the prohibition on joinder of actions, consolidations, and class actions from the arbitration provision. Defendants should have known that it would render initiating the arbitration so prohibitively expensive as to be unconscionable and would force plaintiffs to arbitrate the same claims on the same facts 13 times. Defendants' failure to justify the prohibition demonstrated it was included for the improper purpose of discouraging or preventing park residents from vindicating their rights. (*Parada, supra*, 176 Cal.App.4th at pp. 1586-1587.) Moreover, the ambiguous cost-shifting language does not save the arbitration provision when it can be interpreted to mean both that the arbitrator can and cannot assign costs to defendants,[2] allowing defendants to choose the most convenient interpretation depending on whether they are in court or in arbitration. We cannot rewrite this language according to what we believe is fair and equitable. (*Mercuro v. Superior Court* (2002) 96 Cal.App.4th 167, 185-186.)

---

[2] As we explained earlier, it is unclear whether "costs" include both the arbitrators' fees and administrative fees, or administrative fees alone. And it also unclear whether, upon an ability to pay finding, the arbitrator can require defendants to bear plaintiffs' costs or merely lower plaintiffs' costs.

DISPOSITION

The trial court's order denying defendants' motion to compel arbitration is affirmed.  Plaintiffs shall recover costs on appeal.  (Cal. Rules of Court, rule 8.278(a).)


 /s/
MESIWALA, J.


I concur:


 /s/
MAURO, Acting P. J

RENNER, J., Dissenting.

The trial court denied defendants' motion to compel arbitration because it determined the Federal Arbitration Act (FAA) does not apply to the lease agreements and the arbitration provision within these agreements is void under the Mobilehome Residency Law (Civ. Code, § 798 et seq.). Alternatively, the trial court concluded that, even if the FAA applies to the lease agreements, the arbitration provision is unenforceable because it is unconscionable. The court found the arbitration provision is substantively unconscionable because it undermines statutory protections under the Mobilehome Residency Law and lacks mutuality. The majority does not answer whether the FAA applies or discuss the Mobile Home Residency Law at all. (Maj. opn. *ante*, at p. 2.) Rather, the majority affirms the trial court's order based solely on an analysis of unconscionability that follows neither the path charted by the trial court nor any authority identified by the parties or this court. (Maj. opn. *ante*, at pp. 2, 9-10.) Accordingly, I must dissent.

The majority acknowledges that substantive unconscionability must be present for a court to refuse to enforce an arbitration provision under the doctrine of unconscionability. (*Sanchez v. Valencia Holding Co. LLC* (2015) 61 Cal.4th 899, 910.) (Maj. opn. *ante*, at p. 5.) The party asserting the defense of unconscionability bears the burden of proof. (*Sanchez v. Valencia Holding Co. LLC, supra*, at p. 911.) I agree that some degree of procedural unconscionability was demonstrated in this case, and thus limit my comments to the absence of any substantive unconscionability.

"Substantive unconscionability examines the fairness of a contract's terms. This analysis 'ensures that contracts, particularly contracts of adhesion, do not impose terms that have been variously described as " ' "overly harsh" ' " ' [citation], " 'unduly oppressive' " [citation], " 'so one-sided as to "shock the conscience" ' " [citation], or "unfairly one-sided" [citation]. All of these formulations point to the central idea that the

1

unconscionability doctrine is concerned not with "a simple old-fashioned bad bargain" [citation], but with terms that are "unreasonably favorable to the more powerful party." ' [Citation.]  Unconscionable terms ' "impair the integrity of the bargaining process or otherwise contravene the public interest or public policy" ' or attempt to impermissibly alter fundamental legal duties.  [Citation.]  They may include fine-print terms, unreasonably or unexpectedly harsh terms regarding price or other central aspects of the transaction, and terms that undermine the nondrafting party's reasonable expectations." (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 129-130.)  " '[T]he paramount consideration in assessing [substantive] unconscionability is mutuality.' " (*Nyulassy v. Lockheed Martin Corp.* (2004) 120 Cal.App.4th 1267, 1281.)  Lack of mutuality was one of two reasons the trial court identified for finding the arbitration provision substantively unconscionable.  The majority does not even mention this concept.  The majority's brief analysis of substantive unconscionability covers only two topics:  (1) plaintiffs' counsel's declaration stating that JAMS requires a $3,000 filing fee to initiate an arbitration, and (2) the arbitration provision's prohibition on joinder of actions, consolidation, and class actions.  (Maj. opn. *ante*, at pp. 9-10.)  Neither point is persuasive and neither discussion follows the controlling precedent.

Plaintiffs did not argue on appeal or in the trial court that the potential filing fees rendered the arbitration provision *substantively* unconscionable, and I cannot conclude plaintiffs inadvertently demonstrated they did.  The arbitration provision states that the "Commercial Rules of the American Arbitration Association ('AAA') procedures apply" and appears to permit the parties to use any dispute resolution organization within 75 miles.  Plaintiffs provided no explanation as to how JAMS was selected as an example dispute resolution organization or how it differed from the others within a 75-mile radius. I thus cannot find the notion that JAMS requires a $3,000 filing fee in non-consumer matters involving three or more parties establishes the agreement will impose unreasonable costs on the plaintiffs.  The majority has improperly placed the burden on

2

the opposing party on this issue. They criticize defendants for not putting into evidence a fee schedule for any alternative arbitration service or disputing that plaintiffs "cannot afford the $3,000 JAMS filing fee."[1] (Maj. opn. *ante*, at p. 9.) But it was not defendants' burden to show the substantive unconscionability of the potential fees—it was plaintiffs' burden, and they failed to meet it. I disagree with the majority's conclusion that the evidence of the amount arbitration fees charged by one possible alternative dispute organization supports a finding of substantive unconscionability. (Maj. opn. *ante*, at p. 9.) This leaves only the prohibition on joinder of actions, consolidation, and class actions to consider.

Plaintiffs have argued that the arbitration provision's prohibition on consolidation and joinder supports a finding of substantive unconscionability. Plaintiffs argue the cost to arbitrate is prohibitively high for individuals due to the need to hire experts. The trial court expressly did not consider this argument. Again, I cannot conclude plaintiffs met their burden. Plaintiffs' counsel declared that "[t]he costs and fees to litigate and try a [failure-to maintain lawsuit] can be prohibitively high for any one individual. For example, in a similar case in San Jose involving over 60 plaintiffs, *Andrade v. MHC Operating Ltd. P'hip, aka Equity Lifestyle Properties, Inc.*, Plaintiffs incurred $157,213.60 in expert witness fees. In another failure-to-maintain case in San Diego involving 69 plaintiffs, *Aranda v. Terrace View Partners, L.P., et al.*, plaintiffs incurred over $200,000 in costs, much of which were expert fees. Under the circumstances, arbitration proceedings of a subset of the 32 Plaintiffs herein would be very expensive and economically impractical." It is not clear whether plaintiffs' counsel was describing other arbitrations or other court trials or both. As a general matter, one of the benefits of

---

[1] In half of the 12 declarations submitted by plaintiffs, the plaintiff declared, "I cannot afford to advance any costs or pay for arbitration." In the other half, the plaintiff said nothing about costs or ability to pay.

3

arbitration is lower costs in comparison to court proceedings. (*AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. 333, 345, 348.) I cannot conclude plaintiffs demonstrated the costs of arbitrating their dispute would be higher than the costs of litigating in court. The majority and plaintiffs rely on an opinion that pre-dates *Concepcion* for the idea that a prohibition on consolidation or joinder "merely drives up the cost per party of arbitration." (*Parada v. Superior Court* (2009) 176 Cal.App.4th 1554, 1581.) (Maj. opn. *ante*, at p. 10.) The U.S. Supreme Court in *Concepcion* rejected an argument that allowing class proceedings in arbitration is "necessary to prosecute small-dollar claims that might otherwise slip through the legal system. . . . States cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons." (*AT&T Mobility LLC v. Concepcion, supra*, at p. 351.) Furthermore, no authority has been cited that supports the proposition than an arbitration provision can be found substantively unconscionable *solely* based on a prohibition of joinder, consolidation, or class actions. There is, however, authority for the proposition that it cannot be. (See, e.g., *Penilla v. Westmont Corp*. (2016) 3 Cal.App.5th 205, 219, fn. 11 ["We do not hold that the prohibition of joinder renders the contract unenforceable"]; *Sanchez v. Carmax Auto Superstores California, LLC* (2014) 224 Cal.App.4th 398, 408 [prohibition on consolidation of claims of different employees into one proceeding was not unconscionable].) Nonetheless, the majority declares: "We do not see the need for these causes of action to be brought separately." (Maj. opn. *ante*, at p. 10.) The majority has not persuaded me that this court is free to make such a declaration after *Concepcion*, nor does the majority persuade me that if I could find the prohibition on consolidation and joinder unconscionable in this case, I could conclude that the unconscionability is not saved by severance.

4

Because the majority has advanced no reason I may use to affirm the trial court's ruling, I dissent.

/s/_____
RENNER, J.